## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KARLA BALZER,**

     *Plaintiff,*

     v.

**CLARITY SERVICES, INC.,**

     *Defendant.*

Case Number:

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Karla Balzer** ("**Ms. Balzer**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Clarity Services, Inc.** ("**Clarity**" or "**Defendant**"), stating as follows:

## PRELIMINARY STATEMENT

1.     This is an action brought by Ms. Balzer against Clarity for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.     Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3.     Clarity is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

4.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and /or caused by Clarity within Polk County, Florida, which is in the Middle District of Florida.

## PARTIES

### Ms. Balzer

5.    **Ms. Balzer** is a natural person residing in the City of Lakeland, Polk County, Florida.

6.    Ms. Balzer is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7.    **Clarity** is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8.    Clarity is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

9.    Clarity is a nationwide *Consumer Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third

parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail, internet, and/or telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Ms. Balzer

10.     Around February 2020, Clarity began maintaining a credit file on Ms. Balzer.

11.     On or around May 7, 2022, Clarity incorporated credit information belonging to a separate, unrelated consumer into Ms. Balzer's file.

12.     Clarity falsely associated information apparently belonging to Ariana D. Rodriguez Corzon ("Ariana Corzon"), an unrelated individual who appears to live in Dania, Florida, into its credit file regarding Ms. Balzer. **SEE PLAINTIFF'S EXHIBIT A.**

13.     Clarity incorporated a significant amount of information likely belonging to Ariana Corzon into its file on Ms. Balzer, including:

   a)  Date of birth in 1971;

   b)  Home address in Dania, Florida;

   c)  Residential history;

   d)  Telephone numbers;

e) Employment Information; and,

f) Credit inquiries from Westlake Financial Services. *Id.*

14.    Clarity's file on Ms. Balzer is an example of a *mixed file*.

15.    A mixed file is a credit file that contains information concerning two or more persons rather than the one person about whom it should relate.

16.    Clarity caters its consumer reports to subprime lenders, many of whom utilize the personal identifying information maintained by Clarity to verify the identity of a potential borrower, as the applications are submitted online.

17.    Clarity also incorporates data such as bank accounts and employment information into risk scores that it provides to certain end-users upon request.

18.    Thus, Clarity's inclusion of personal identifying information belonging to another consumer has a severe, negative effect on a consumer's ability to obtain credit.

19.    Clarity knows that its automated systems often erroneously match tradeline information to an incorrect consumer's credit file with minimal commonalities.

20.    Despite such knowledge, Clarity has declined to correct its systems, which often appear to match a consumer's data with the information in its files

based on a single data point instead of utilizing all of the information provided to it.

21.     Clarity, a CRA, has a legal obligation to use reasonable procedures to assure the maximum possible accuracy of its consumer reports. 15 U.S.C. § 1581e(b).

22.     Despite its obligation, on May 7, 2022, Clarity sold two consumer reports regarding Ms. Balzer to Westlake Financial Services in connection with an application for an auto loan initiated by another consumer, presumably Ariana Corzon.

23.     Upon learning that Clarity had sold her information to a company which did not ask for a report on her, nor did it have legal purpose to obtain it, Ms. Balzer became very concerned and emotionally distraught.

24.     Clarity also sold consumer reports to a large number of consumer lenders (*e.g.,* WithU Loans, TBO Bank/Atlas, Credit Ninja, Loan At Last, etc.).

25.     Each of these lenders, in connection with evaluating Ms. Balzer's credit applications, obtained a copy of Ms. Balzer's Clarity credit report containing obviously false information about Ms. Balzer.

26.     As a result, each one of these lenders either declined to offer credit to Ms. Balzer or offered her credit on less-favorable terms.

27.    Beyond the systemic problems Clarity's automated systems routinely encounter in associating different consumers with each other, Clarity programs its systems to acquire and report as much information as possible, with little regard to the quality of the data, or if the data could even possibly be true.

28.    As a prime example, Clarity reported that Ms. Balzer has *four different* dates of birth, information which could not possibly be true. ***Id.***

29.    Another example of Clarity's incorporation of logically impossible, obviously false information is that Clarity incorporated data stating that on August 11, 2023, the date of Ms. Balzer's next check would be January 1, 2001 – more than 20 years in the past. ***Id.***

30.    Clarity also incorrectly reported Ms. Balzer's address history multiple times, claiming that she resided at addresses which are obviously incorrect. For example, Clarity reported five different instances of an address at "E EDGEWOOD DR" with only some iterations including a unit number. ***Id.***

31.    Clarity also reported three different iterations of an address at "PINEBROOKE PL" with different street numbers and even a different city. ***Id.***

32.    Making matters worse, Ms. Balzer's residential history, according to Clarity's reporting, is chaotic with multiple overlapping residencies during the

same time frame. For instance, Clarity reported Ms. Balzer's residency at "XXXX[1]
E EDGEWOOD DR" between June 2021 and February 2025. This period directly
overlaps with different reported residencies at "XXXX PINEBROOKE PL" from
February 2021 to August 2023. ***Id.***

33.    A CRA following "reasonable procedures" should flag when a
consumer is reported at two different "Home Addresses" simultaneously, but
Clarity failed to do so.

34.    Clarity frequently misreported Ms. Balzer's length of residential
history, often contradicting themselves in their own reporting. Between April 2,
2023 at 9:29:51 am and August 11, 2023 at 5:18:25 pm, Clarity reported 9 instances
in which Ms. Balzer had been residing at her current address for "0 Months." Yet,
during an overlapping time frame from May 20, 2023 to August 24, 2023, Clarity
also reported Ms. Balzer had been residing at her current address for "3 Months."
Clarity's reporting "0 Months" and "3 Months" simultaneously is obviously
inaccurate as both cannot be true. ***Id.***

35.    Furthermore, in yet another report ending on August 24, 2023, Clarity
reported a 12-month long residency which is not chronologically reconcilable with

---

[1] Ms. Balzer's Clarity credit disclosure contains the full address, but it has been redacted here for privacy.

the aforementioned entries suggesting a "0 Month" residency as of August 11, 2023 and a "3 Month" residency on August 24, 2023. *Id.*

36.    Additionally, Clarity's report that Ms. Balzer resided at her current address for "0 Months" created the false and negative impression that either she had recently moved or was unhoused. *Id.*

37.    Moreover, on May 9, 2021, Clarity reported Ms. Balzer resided at her current address for "1477 Months," (*i.e.*, over 123 years), which is absurd on its face. *Id.*

38.    These overlapping and contradictory residential timelines create a facially inaccurate and frankly nonsensical residential history that violates the mandate of 15 U.S.C. § 1681e(b) and creates the negative and false impression that Ms. Balzer has been unhoused, moves residences frequently, or resides at multiple residences simultaneously.

39.    Additionally, Clarity reported Ms. Balzer's housing status as including "OTHER" and "X."[2] Such reporting provides no meaningful information to a potential lender and was the likely the result of the insertion of default, placeholder information. *Id.*

---

[2] Likely, Clarity's systems somehow picked up a housing status of "X" from a credit application which asked, to the effect of, "Do you own or rent? Check box [ ] own [x] rent" and somehow interpreted the "X" checking a box as Plaintiff's actual housing status.

40.    Thus, Clarity's systems are literally ***programmed to insert false information*** into consumer credit files in many instances, such as the above, despite the FCRA's mandate to utilize procedures designed to ensure maximum possible accuracy of information.

41.    Clarity's employment data also contains distortions about Ms. Balzer's employment history. Specifically, on nine occasions between April 2, 2023 and August 11, 2023, Clarity reported Ms. Balzer had been with her current employer for "0 Months." This entry is objectively false and created the damaging impression that Ms. Balzer was either repeatedly unemployed or had a tendency to abruptly switch occupations. ***Id.***

42.    Additionally, Clarity's report of "0 Months" of employment on nine occasions between April 2, 2023 and August 11, 2023 conflicts with an overlapping window from April 30, 2021 to August 24, 2023, in which Clarity also reported "12 Months" of employment tenure on four occasions. These simultaneous reports are not only chronologically impossible but also create a misleading and unreliable record of Ms. Balzer's employment stability. ***Id.***

43.    As another example, in June 2023, Clarity's report contains at least three different employment lengths – "60 Months" (last reported on June 30, 2023), "120 Months" (last reported on June 16, 2023), and "0 Months" (for a period of

time containing June 2023). Clarity's reporting is inherently contradictory and facially false. *Id.*

44.     On April 20, 2021, Clarity reported Ms. Balzer had been with her current employer for "240 Months." Then, on June 4, 2021, Clarity reported Ms. Balzer had been with her current employer for "72 Months." While a job change was possible between April 20, 2021 and June 4, 2021, it would be temporally impossible for an individual to gain "72 Months" of experience in less than two months. *Id.*

45.     Clarity also reported that Ms. Balzer's occupation was "POLK COUNTY SCHOOLS," which is clearly the name of an employer and not an occupation. This fact should have been known to Clarity since "POLK COUNTY SCHOOLS" was also reported as Ms. Balzer's employer. *Id.*

46.     Clarity's incorporation of inaccurate and conflicting reports of Ms. Balzer's employment history fails to reflect Ms. Balzer's true professional record, portrays her as having pervasive employment instability, and creates a materially misleading profile that violates the accuracy requirements of 15 U.S.C. § 1681e(b).

47.     Many subprime lenders – the type of lenders Clarity services almost exclusively – carefully examine the length of time a consumer has been at the same

employer, as income stability is a key factor analyzed in their underwriting decisions.

48.    A credit report indicating "0 Months" on the job will frequently impact a consumer's ability to be approved for credit, as a short time at an employer is viewed negatively.

49.    The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income to ensure the consumer is able to repay any funds the lender advances.

50.    Consequently, Clarity's inclusion of demonstrably false information about Ms. Balzer's income and employment had a significant negative impact on Ms. Balzer's ability to obtain new credit.

51.    Clarity claimed multiple different times that Ms. Balzer has been paid, "B," "BIWEEKLY," "MONTHLY," "SEMI-MONTHLY," "SEMIMONTHLY," and "TM." *Id.*

52.    At no point was Ms. Balzer paid once a month.

53.    No legend or guide explains what "B" or "TM" might mean.

54.    Moreover, "SEMI-MONTHLY" and "SEMIMONTHLY" are clearly the same value, but Clarity lists them as if they are individual and distinct.

55.    Clarity's automated "risk score" heavily considers the number of reported changes to a consumer's pay frequency. Thus, Clarity's failure to catch the obvious – that "SEMI-MONTHLY" and "SEMIMONTHLY" are the same thing – created an artificially low risk score for Ms. Balzer, which was sold to potential creditors.

56.    Further, as Clarity's credit scoring system heavily considers a consumer's income stability, the presence of information suggesting Ms. Balzer was paid only monthly is heavily detrimental to her, since most creditor's obtaining her report from Clarity require payment on a bi-weekly schedule.

57.    Clarity also reported that Ms. Balzer has *three* Florida driver's licenses even though she does not, nor is it even possible for a person to have three different Florida driver's licenses. ***Id.***

58.    Compounding the issue, Clarity redacted all but the last four digits of the three driver's licenses Ms. Balzer supposedly has in its credit disclosure to Ms. Balzer, which was supposed to contain the full, unredacted contents of her file. ***Id.***

59.    One of Ms. Balzer's alleged driver's licenses has only 12 characters, meaning this could not possibly be an actual license number since all Florida driver's licenses contain 13 alphanumeric characters. ***Id.***

60.    Clarity also redacted the account numbers of all 38 credit accounts in Clarity's file on Ms. Balzer, even though Clarity includes the full account numbers in reports it sells to creditors and potential creditors.

61.    Nothing in the FCRA allowed Clarity to redact this information, but it did so anyway.

62.    Records from Clarity show it sold over five dozen reports regarding Ms. Balzer in the past five years.

63.    Each of these reports contained false and preposterous information about Ms. Balzer's employment history, housing status, income, and more.

64.    Many of these reports also contained data that belonged to an unrelated individual.

65.    The FCRA is clear in its requirement that Clarity, as a CRA, is required to prepare accurate reports:

> **Accuracy of Report**.    Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.  15 U.S.C. §1681e(b).

66.    Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Balzer.

67.     Clarity was thus aware that when it sold reports on Ms. Balzer in the last four years that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

**Clarity Fails to Meaningfully Disclose Legally-Required Information**

68.     On February 19, 2026, Ms. Balzer requested a consumer credit disclosure from Clarity.

69.     Upon receipt of Ms. Balzer's request, Clarity was required to "clearly and accurately" disclose all information in Ms. Balzer's file at the time of her request, including the identification of *each* person, including an end user if the report was obtained by a reseller, who obtains a consumer report from Clarity within the prior year *for any purpose.* See 15 U.S.C. § 1681g(a)(3)(A)(ii).

70.     "Identification" is defined in the FCRA as "the name of the person, or if applicable, the trade name (written in full) under which such person conducts business." 15 U.S.C. § 1681g(a)(3)(B)(i).

71.     Frequently, Clarity fails to fulfill its legal obligations to disclose this data, often disclosing an incomprehensible string of characters which virtually no one could comprehend.

72.     For example, Clarity's disclosure shows these inquiries made in February and March 2025:

| | | | |
|---|---|---|---|
| 3/26/2025 7:59:59 pm EDT 44968757502 | | Pre-screen | CCCnct-TLS-Fulton |
| 2/26/2025 6:59:59 pm EST 44587692415 | | Pre-screen | CCCnct-TLS-Fulton |

73.    In each of these instances, Clarity disclosed what appears to be three end users within an individual inquiry; moreover, "CCCnct-TLS-Fulton" is not the name(s) of any creditor readily ascertainable to a reasonable person. This labeling does not clearly identify what entity made the inquiries as required by law.

74.    The failure of a person to provide accurate and truthful information as required by law creates an injury-in-face, thus creating standing pursuant to Article III. *See e.g., Havens Realty Corp v. Coleman,* 455 U.S. 363 (1982) (holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied.").

75.    Further, the lack of accurate, full disclosure of who had obtained her credit report caused Ms. Balzer great frustration and emotional distress and made her concerned she was the victim of fraud or identity theft.

76.    Clarity has been failing to provide the legally-required trade names of persons obtaining credit reports, written in full, for at least 10 years, and often substitutes impossible-to-understand shorthand instead.

77.     Clarity thus failed to use reasonable procedures when preparing the credit reports sold to each lender.

78.     Clarity also failed to use reasonable procedures when preparing a consumer disclosure to provide Ms. Balzer upon her request.

79.     As a result of the Defendant's actions, Ms. Balzer has suffered damages, including wasted time trying to figure out what the information in her Clarity file means and how it got there, lost financial opportunities, loss of credit, lower credit scores, significant emotional distress and aggravation, and damage to her reputation.

80.     Ms. Balzer has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

**COUNT I**
**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**

81.     Ms. Balzer adopts and incorporates paragraphs 1 – 80 as if fully stated herein.

82.     Clarity willfully violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Balzer, as reasonable procedures would not have resulted in Clarity's inclusion of information concerning another individual

into Ms. Balzer's reports, nor would reasonable procedures have resulted in Clarity's sale of reports containing erroneous and preposterous information about Ms. Balzer's income, length of residence, employment, and more.

83.    Clarity has been sued on numerous occasions for very similar conduct and knows that its procedures for ensuring accuracy of reports are flawed.

84.    Clarity's conduct was thus willful or done with a reckless disregard for Ms. Balzer's rights under the FCRA.

85.    As a result of its conduct, Clarity is liable to Ms. Balzer pursuant to the FCRA for the greater of Ms. Balzer's actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Balzer respectfully requests this Honorable Court enter judgment against Clarity for:

a.    The greater of Ms. Balzer's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT II
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

86.     Ms. Balzer adopts and incorporates paragraphs 1 – 80 as if fully stated herein, and pleads this count strictly in the alternative to Count I.

87.     Clarity owed Ms. Balzer a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Balzer.

88.     Clarity breached its duty when it sold numerous consumer reports incorporating information concerning another individual into Ms. Balzer's report and which also contained erroneous and preposterous information about Ms. Balzer's income, length of residence, employment, and more.

89.     Clarity's breach amounts to a negligent violation of **15 U.S.C. § 1681e(b)**, and Ms. Balzer is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Balzer respectfully requests this Honorable Court enter judgment against Clarity for:

a.     Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.      Such other relief that this Court deems just and proper.

## COUNT III
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

90.     Ms. Balzer adopts and incorporates Paragraphs 1 – 80 as if fully restated herein.

91.     Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Ms. Balzer with a redacted version of her consumer disclosure, including information which became meaningless when redacted, and which was not redacted when sold to Ms. Balzer's creditors.

92.     Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

93.     Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA to provide clear and accurate disclosures.

94.     As a result of its conduct, Clarity is liable to Ms. Balzer pursuant to the FCRA for the greater of Ms. Balzer's actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Balzer respectfully requests this Honorable Court enter judgment against Clarity for:

a.      The greater of Ms. Balzer's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.      Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.      Such other relief that this Court deems just and proper.

**COUNT IV**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA,**
**15 U.S.C. § 1681g(a)(1)**
**(Pled in the alternative to Count III)**

95.      Ms. Balzer adopts and incorporates Paragraphs 1 – 80 as if fully restated herein and strictly pled in the alternative to Count III.

96.      Clarity owed Ms. Balzer a legal duty to accurately disclose all the information in her credit file upon her request.

97.       Clarity breached this duty when it only provided Ms. Balzer with a redacted version of her consumer disclosure, including information which became meaningless when redacted, and which was not redacted when sold to Ms. Balzer's creditors.

98.    Clarity's breach amounts to a negligent violation of **15 U.S.C. § 1681g(a)(1)**, and Ms. Balzer is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Balzer respectfully requests this Honorable Court enter judgment against Clarity for:

a.    Ms. Balzer's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**COUNT V**
**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA,**
**15 U.S.C. § 1681g(a)(3)(A)(ii)**

99.    Ms. Balzer adopts and incorporates Paragraphs 1 – 80 as if fully restated herein.

100.    Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to identify each person, including the end-user, when applicable, that procured Ms. Balzer's consumer report during the one-year period preceding the date on which the request was made. Clarity disclosed inquiries with false, made-up, and/or non-existent information, and/or utilized incomprehensible shorthand, falling far short of being "written in full" as required.

101.   Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

102.   As a result of its conduct, Clarity is liable to Ms. Balzer pursuant to the FCRA for the greater of Ms. Balzer's actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Balzer respectfully requests this Honorable Court enter judgment against Clarity for:

a.   The greater of Ms. Balzer's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

**COUNT VI**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA,**
**15 U.S.C. § 1681g(a)(1)**
**(Pled in the alternative to Count V)**

103.   Ms. Balzer adopts and incorporates Paragraphs 1 – 80 as if fully restated herein and strictly pled in the alternative to Count V.

104.    Clarity owed Ms. Balzer a legal duty to identify each person that procured Ms. Balzer's consumer report during the one-year period preceding the date on which the request was made.

105.    Clarity breached this duty when it only provided Ms. Balzer with incomprehensible data which did not clearly identify the persons or entities who procured her consumer report.

106.    Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Ms. Balzer is entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Balzer respectfully requests this Honorable Court enter judgment against Clarity for:

a.    Ms. Balzer's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT VII
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)

107.    Ms. Balzer adopts and incorporates paragraphs 1 - 80 as if fully stated herein.

108.    Clarity violated **15 U.S.C. § 1681b(a)(3)** when it furnished at least two (2) reports to Westlake Financial Services about Ms. Balzer in response to a request for a report on an unrelated individual with a different name, date of birth, and Social Security number.

109.    Clarity had no reason to believe it had permissible purpose to furnish these reports as there are essentially no commonalities between the consumer whom Westlake Financial Services requested reports on and Ms. Balzer.

110.    Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

111.    Clarity is thus liable to Ms. Balzer, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Balzer's actual damages and statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Balzer respectfully requests this Honorable Court enter judgment against Clarity for:

a.    The greater of Ms. Balzer's actual damages or statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT VIII
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)
## (Pled in the Alternative to Count VII)

112.    Ms. Balzer adopts and incorporates paragraphs 1 - 80 as if fully stated herein and pleads this count strictly in the alternative to Count V.

113.    Clarity responded to two requests from Westlake Financial Services to provide a report on an individual not related to Ms. Balzer, and Clarity responded to Westlake Financial Services by providing consumer reports regarding Ms. Balzer.

114.    Thus, Clarity negligently violated **15 U.S.C. § 1681b(a)(3)** when it furnished at least two (2) reports to Westlake Financial Services about Ms. Balzer in response to a request for a report on an unrelated individual with a different name, date of birth, and Social Security number.

115.    As such, Ms. Balzer is entitled to her actual damages.

**WHEREFORE**, Ms. Balzer respectfully requests this Honorable Court enter judgment against Clarity for:

a.    Ms. Balzer's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §

1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted on February 27, 2026**,** by:

**SERAPH LEGAL, P.A.**

*/s/ Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-3434
Fax: 855-500-0705
*Counsel for Plaintiff*

### ATTACHED EXHIBIT LIST

A.  Ms. Balzer's Clarity Consumer Disclosure, February 19, 2026 – Excerpts